IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARGARET JONES                                                                                          PLAINTIFF

VS.                                                                              CIVIL ACTION NO. 3:14cv69-CWR-FKB

CAROLYN W. COLVIN, COMMISSIONER                                              DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Margaret Jones of the Commissioner of Social Security's final decision denying Jones's request for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). In rendering this Report and Recommendation, the Court has carefully reviewed the Administrative Record [8] regarding Jones's claims (including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion for Summary Judgment [9] and supporting Memorandum, Defendant's Motion for an Order Affirming the Commissioner's Decision [11], Defendant's Memorandum in Support of the Commissioner's Decision [12], and Plaintiff's Rebuttal Brief [13].

For the reasons discussed in this Report and Recommendation, the Court finds that the Commissioner's decision is supported by substantial evidence and hereby recommends that the decision be upheld.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Jones, age 53 at the time of the hearing decision, appeals the Social Security Administration's denial of benefits. On November 30, 2010, Jones filed a Title II application for

disability insurance benefits alleging an onset date of October 1, 2009, and alleging that she is unable to work due to bilateral carpal tunnel syndrome and migraine headaches. [8] at 145.[1] Jones also complained of weakness on her right side that causes her to fall three times a week and depression. *Id.* at 34-35. Jones formerly worked as a certified nurse assistant for nineteen years, and she last worked on June 2, 2007. *Id.* at 84. The Commissioner denied her request initially and on reconsideration. *Id.* at 14. After holding a hearing on October 11, 2012, during which she was represented by counsel, the ALJ issued an unfavorable decision on November 13, 2012. *Id.* at 14, 22, and 30. The Appeals Council denied her request for review of the ALJ's decision on November 29, 2013, and this appeal followed. *Id.* at 1.[2]

In the ALJ's November 2012 decision, he worked through the familiar sequential evaluation process for determining disability.[3] With regard to Jones's disability insured status,

---

[1]Citations reflect the original pagination of the administrative record.

[2]Jones previously filed a request for a period of disability and disability benefits on July 27, 2007, alleging an onset date of June 1, 2007. *Id.* at 81. It appears that Jones alleged she was disabled because of carpal tunnel syndrome in both hands and because of migraine headaches. *Id.* at 83. The Commissioner denied that claim initially and on reconsideration. *Id.* at 81. After a hearing, the ALJ issued an unfavorable decision on September 24, 2009. *Id.* at 89. The ALJ concluded that Jones was not disabled and had the residual functional capacity to perform light work, "except that she is limited to only occasional fingering and handling." *Id.* at 84.

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

the ALJ found that Jones's earnings record demonstrated that she was insured through December 31, 2012. *Id.* at 14, 16. The ALJ found that Jones had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. *Id.* at 16. He concluded that Jones has the severe impairments of a "history of prior carpal tunnel release procedures, occasional headaches and mild obesity." *Id.* Nevertheless, the ALJ found that Jones did not have an impairment or combination of impairments of Listing severity. *Id.* Considering the record, the ALJ determined that Jones has the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, and occasional balancing, stooping, crouching, kneeling and crawling." *Id.* With that in mind, and after consulting a vocational expert, the ALJ concluded that Jones is capable of making a successful adjustment to other work, such as a cleaner, a poultry worker, and a fast food worker. *Id.* at 22. Accordingly, the ALJ found that Jones was not disabled from October 1, 2009, through the date of the decision, November 13, 2012. *Id.*

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Jones's records in their briefs, and the ALJ provided a

---

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

thorough summary of the records in his decision.

Nevertheless, the observations and evaluations of a some of the medical professionals are worth noting. Dr. Azhar Pasha performed a consultative examination of Jones on May 10, 2010, at Riley Hospital in Meridian, Mississippi. *Id.* at 197. Dr. Pasha observed that Jones had undergone bilateral carpal tunnel release surgery on her right hand in 2007 and on her left hand in 1995. *Id.* Dr. Pasha found that Jones had a negative Tinel's sign and a negative Phalen's test. *Id.* at 198. The doctor observed that Jones had good grip and dexterity in both hands, with a full range of motion in all the extremity joints of the body. *Id.* The doctor observed that Jones's gait was normal. *Id.* The doctor also stated that the "patient is unable to squat due to severe pain; however, the patient can walk without using a cane and cane is not felt to be medically necessary to prevent falls." *Id.* at 199. The doctor also found that Jones has "5/5 motor strength in all extremities." *Id.* The exam was "negative for significant anxiety, depression, or suicidal ideation," but the doctor did find "[m]ild anxiety and depression," as well as migraine headaches and lower back pain. *Id.*

The ALJ referenced Jones's history of treatment by Dr. Rafique Ahmad in neurology at Rush Medical Group, Meridian, Mississippi. *Id.* at 18, 331. The record contains treatment notes from 2007 to 2011. *Id.* at 313-338. The ALJ observed that the treatment notes in 2010 and 2011 indicate treatment for headaches, but "do not indicate complaints of carpal tunnel syndrome residuals or any problems involving the right side of the body or the right knee." *Id.* at 18.

Plaintiff's treatment records from Dr. Razee A. Ahmad, of the East Mississippi Medical Clinic, Newton, Mississippi, are also in the record. *Id.* at 365-367. At Jones's latest visit on May 18, 2012, the doctor observed that she had not visited the clinic for eleven months, and that

she admitted that she had not been taking medicines as prescribed. *Id.* at 365. At that time, the doctor commented that Tinel's sign was negative, and that she had normal gait and ambulation. *Id.* at 366. He also observed that she had "no anxiety, no depression," and "normal behavior." *Id.* Jones also denied headaches and migraines at that visit, as well as loss of balance. *Id.* She did, however, complain of numbness or tingling in her right hand and right arm. *Id.*

Also in the record is an October 24, 2012, Medical Source Statement from Dawn Kiker, F.N.P, with East Mississippi Medical Center in Newton, Mississippi. *Id.* at 410-411. In that statement, Nurse Practitioner Kiker evaluated Jones's ability to perform certain work activities on a regular and continuing basis for eight hours a day, five days a week, or an equivalent work schedule. *Id.* Kiker indicated that Jones could occasionally lift and carry one to ten pounds, but could rarely lift and carry eleven to fifty pounds. *Id.* at 410. Kiker found that Jones could rarely reach with her right hand/arm, but could occasionally reach with her left hand/arm. *Id.* As to handling, the nurse practitioner stated that Jones should rarely handle with her right hand and should occasionally handle with her left hand. *Id.* Kiker concluded that Jones could rarely finger with her right hand and could occasionally finger with her left hand. *Id.* at 411. Characterized as persisting since July 2010, these restrictions were based on Kiker's diagnoses of chronic pain, pain in joint involving shoulder region, pain in joint involving lower leg, and carpal tunnel syndrome. *Id.*

### III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); *accord Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000). Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*. But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). Finally, "[a] reviewing court may not, however, examine only the evidence favorable to the Commissioner; it must also examine contrary evidence."

*Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

## IV. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff raises issues for consideration, quoted as follows:

1. The ALJ failed [to] account for limitations to Claimant's ability to handle and finger from carpal tunnel syndrome in both hands.

    a. The ALJ failed to properly account for a non-medical source opinion.

2. The ALJ's conclusion as to Claimant's residual functional capacity is not supported by substantial evidence in that it fails to account for the severity and persistence of Claimant's migraine headaches.

The Court now turns to these alleged errors.

### A. Did the ALJ fail to account for limitations to Claimant's ability to handle and finger from carpal tunnel syndrome in both hands?

Plaintiff argues that the ALJ failed to consider Jones's repeated treatment for symptoms of numbness, tingling and pain in her hands and arms, even long after surgery was completed on her left wrist in 1995 and her right wrist in 2007. Plaintiff points to medical assessments and her complaints in the record dating from 2007 to 2011 as support for her argument that the ALJ's RFC is not supported by substantial evidence. Plaintiff criticizes the jobs of cleaner, poultry worker, and fast food worker as being beyond her ability to handle and finger, considering her diagnosed carpal tunnel syndrome in both hands.

The responsibility of determining the residual functional capacity rests with the ALJ, not with medical personnel. *Villa*, 895 F.2d at 1023-1025. Likewise, the Court "must refrain from

re-weighing the evidence or substituting its judgment for that of the Commissioner." *Ripley*, 67 F.3d at 552.

The record contains objective medical tests and observations from Jones's treating and consultative physicians, more recent than that cited by Plaintiff, *see* [10] at 12, that support the ALJ's RFC determination that Plaintiff can perform light work, including the handling and fingering actions about which Plaintiff complains. In a May 2010 consultative examination, Dr. Pasha found that Jones had a negative Tinel's sign and a negative Phelen's test. [8] at 198. Dr. Pasha also observed that Jones had good grip and dexterity in both hands, with a full range of motion in all the extremity joints of the body. *Id.* The ALJ observed that Dr. Rafique Ahmad's treatment notes in 2010 and 2011 do not contain complaints of carpal tunnel syndrome. *Id.* at 18. In January 2012, Dr. Rafique Ahmad commented that Jones's "[s]trength is 5/5 in all 4 extremities." *Id.* at 371. In May 2012, Dr. Razee Ahmad commented that although Jones complained of numbness or tingling in her right hand and arm, her Tinel's sign was negative, and she had no sensory or neurological abnormalities. *Id.* at 366. Because the foregoing examples provide substantial evidence supporting the ALJ's conclusion that Plaintiff has the residual functional capacity to perform light work, without specific fingering and handling restrictions as posited by Plaintiff, the undersigned finds that the ALJ's conclusion on this issue must be upheld. Accordingly, this argument does not provide a basis for reversal or remand.

### B.  Did the ALJ fail to account properly for a non-medical source opinion?

Plaintiff argues that the ALJ failed to consider properly the opinion of nurse practitioner Kiker. Plaintiff recognizes that, as the opinion of a nurse practitioner, Kiker's opinion is not accorded the same weight as that of a treating physician. The ALJ cited two bases – lack of

support by objective evidence and inconsistency with other substantial evidence in the record – as his reasons for giving Kiker's opinion little weight as to Jones's physical limitations concerning her hands. *Id.* at 19-20. Jones asserts that the ALJ failed to fully explain his reasons for giving the opinion little weight, in contravention to 20 C.F.R. §§ 404.1527 and Social Security ruling 06-03p. Jones also argues that this failure to accord weight to Kiker's opinion contributed to a faulty hypothetical posed to the vocational expert.

As recounted *supra*, Kiker stated that Plaintiff should be limited to occasionally lifting and carrying up to ten pounds. [8] at 410. With regard to repetitive use of her hands, Kiker concluded that Jones should rarely reach with the right, occasionally reach with the left, rarely handle with the right, and occasionally handle with the left. *Id.* Kiker also found that Jones should rarely finger with the right and occasionally finger with the left. *Id.* at 411.

Acceptable medical sources, as found in 20 C.F.R. § 404.1513 and 416.913(a), include licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists (for visual disorders), licensed podiatrists (for foot and ankle impairments only), and qualified speech pathologists (for speech and language impairments only). Thus, the regulations clearly outline what qualifies as an acceptable medical source, and a nurse practitioner is not among those listed. 20 C.F.R. § 416.913(a). Although a nurse practitioner falls under the category of "other sources" in § 416.913(d), the ALJ is not obligated to consider evidence offered by those sources.

Even so, the ALJ considered Kiker's statements regarding Jones's use of her hands and pointed out that Kiker's opinion was not supported by any objective medical evidence, such as "abnormal medical findings on examination or abnormal diagnostic test results." [8] at 20. The

ALJ had previously discussed the findings of Dr. Razee Ahmad, Dr. Rafique Ahmad, and Dr. Azhar Pasha, and recounted the various tests, such as grip strength and Tinel's and Phalen's signs, that the doctors had performed on Jones.  The ALJ pointed out that Kiker's opinion was "at odds with the objective medical evidence in the record," and since Kiker's opinion was "not 'well supported by medically acceptable clinical and laboratory techniques'" and was "inconsistent with other substantial evidence in the case record," the ALJ found that it was "not entitled to controlling weight on the issue of [Jones's] physical limitations," citing 20 C.F.R. § 404.1527(d)(2).  *Id.*  The Court's review of the record does not show that Kiker performed the same grip and strength tests that the doctors performed on Jones, and agrees that Kiker's opinion appears inconsistent with the findings of Drs. Razee Ahmad, Rafique Ahmad, and Azhur Pasha.

The ALJ also noted that "while the evidence does not establish any limitations in the claimant's ability to use her hands to perform routine gross or fine manipulative actions," he concluded that her carpal tunnel syndrome is a "severe" impairment and accounted for this "severe" impairment with the light RFC.   The Court's review of the medical record does not reveal where other medical professionals placed handling and fingering limitations on Jones, such as those provided by Kiker, and Plaintiff has not pointed to opinions by treating physicians which would support Kiker's handling and fingering limitations. Plaintiff points to the 2007 nerve conduction study on her right hand as supportive of Kiker's opinion, but the opinions of Drs. Razee Ahmad, Rafique Ahmad, and Azhar Pasha post-date the 2007 nerve conduction study.  Accordingly, the ALJ's decision on this issue is supported by substantial evidence, and this issue does not provide a basis for reversal or remand.

Finally, Plaintiff briefly argues that the faulty RFC contributed to a faulty hypothetical

posed to the vocational expert because the RFC posed to the vocational expert failed to account for her handling and fingering limitations.  Once again, the responsibility of determining the residual functional capacity rests with the ALJ, not with medical personnel.  *Villa*, 895 F.2d at 1023-1025.  Nevertheless, at the hearing the ALJ posed a hypothetical to the vocational expert which considered that an "individual could use her hands to perform gross, fine, manipulative actions only occasionally."  [8] at 50.  The vocational expert testified that Plaintiff could perform the light jobs of a highway construction flagger and a hostess in a food service setting.  *Id.* at 50-51.  Accordingly, because the vocational expert identified jobs that Jones could perform with handling and fingering limitations, this argument is without merit, and fails to provide a basis for reversal.

C.  Did the ALJ's RFC fail to account for the severity<br>and persistence of Claimant's migraine headaches?

Plaintiff argues that the ALJ failed to make a function-by-function assessment as required by Social Security Ruling 96-8p.  Jones asserts that the ALJ's RFC fails to provide the vocational significance that her "severe" impairment of occasional headaches imposes on her ability to perform basic work activities.  Plaintiff further argues that the record does not support the ALJ's finding that "claimant may have occasional headaches, but there is no evidence to establish a longitudinal history of serious headaches." *Id.* at 20.

A determination of whether a claimant can perform her past relevant work requires an analysis of her residual functional capacity (RFC).  SSR 96-8p describes the RFC analysis as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  1996 WL 374184 (SSA 1996).  While the

ALJ did not specifically discuss each of Jones's abilities in a function-by-function format, he discussed her exertional and non-exertional capacity, including the nature of the activities affected in the narrative discussion format, as directed by SSR 96-8p. [8] at 19-21.  He discussed each of her severe impairments and their support or lack of support in the medical evidence. He also translated these conclusions to the workplace, providing a basis for his determination that Jones can perform light work with certain restrictions.  Accordingly, this argument does not provide a basis for reversal.

Plaintiff also argues that there is no reasonable justification for the ALJ's conclusion that there is "no evidence to establish a longitudinal history of serious headaches." *Id.* at 20.  Once again, the Court is mindful that in applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain.  20 C.F.R. §§ 404.1529(a), 416.929(a)(1997); *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id.*   The Court is mindful that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.  <u>Harrell v. Bowen</u>, 862 F.2d 471, 480 (5th Cir. 1988).

Although there is a six-day admission to the hospital in November 2011, during which Plaintiff complained of a headache, dizziness, and falls, [8] at 341-364,[4] other medical evidence supports the ALJ's decision. Indeed, as the ALJ stated, the treating physicians do not comment that Plaintiff's headaches produce "any significant physical limitations." *Id.* at 20.

Moreover, the ALJ pointed out that the "issue of credibility [in this case] is very important." *Id.* The ALJ found that "the claimant's allegations of debilitating symptoms and limitations are not credible." *Id.* The ALJ pointed out that no treating physician or treating psychiatrist/psychologist advised that Jones experienced "significant physical or psychologically related limitations." *Id.* According to the ALJ, Plaintiff's allegations of frequent falling were not reflected in Dr. Ahmad's treatment records, and she also denied depression at various times throughout the records. *Id.* at 21. The ALJ also stated that Jones's allegations of ill side effects from medication were not documented in the record. *Id.*

The ALJ fully discussed the plaintiff's medical condition, including her headaches, based upon the records that were before him. It is also evident that Plaintiff's credibility, which is not for this Court to assess, played an important role in the ALJ's decision. Because the ALJ's opinion shows that the ALJ considered Jones's complaints of pain along with her activities and

---

[4]Upon release, the doctor's final diagnoses were "hypotension secondary to over treatment of hypertension; headache; frontal meningioma; hypercholesterolemia; acute renal injury, resolved; and vaso motor symptoms of menopause." *Id.* at 341. Upon entry to the hospital, Jones tested positive for tetrahydrocannabinol and tricyclic antidepressants. *Id.* at 354. The doctor noted that the headache was not associated with vomiting. *Id.* at 341. The doctor attempted to treat her headache with morphine, but Jones complained that she had an allergic reaction to it. *Id.* Her headache was subsequently relieved by a combination of Dilaudid and Benadryl. *Id.* On November 7, the day she was discharged, she awoke with blood pressure of 144/67, and the doctor concluded that Jones had "obtained the maximum benefit of hospitalization." *Id.* at 342.

the medical evidence, the undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

## V. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that substantial evidence supports his decision, and that no reversible error exists. Accordingly, the undersigned recommends that the Motion for an Order Affirming the Commissioner's Decision [11] be granted, and the Motion for Summary Judgment filed by Plaintiff [9] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 2nd day of March, 2015.

    /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE